RECEIVED
IN ALEXANDRIA, LA

SEP 1 7 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

JONICA H. PHILLIPS            CIVIL ACTION NO. 1:10-cv-0833 and
        LA. DOC #429550       CIVIL ACTION NO. 1:10-cv-0834
VS.

                              SECTION P

                              JUDGE JAMES T. TRIMBLE, JR.

WARDEN TIM WILKINSON          MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

*Pro se* petitioner Jonica H. Phillips filed the instant petitions for writ of *habeas corpus* on May 12, 2010. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Winn Corrections Center, Winnfield, Louisiana. In these consolidated proceedings he attacks his July 16, 2007 purse-snatching conviction in Louisiana's Thirty-Fifth Judicial District Court in the matter entitled State of Louisiana v. Jonica H. Phillips, Docket Number 07-0026.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the petitions be **DISMISSED WITH PREJUDICE.**

## Background

On April 13, 2007, petitioner was charged by Bill of Information with possession of drug paraphernalia and two counts of theft of property having a value of less than $300 under Docket Number 07-185 of the Thirty-Fifth Judicial District Court. [See 1:10-cv-0833 (Phillips I) at Doc. #1-2, p. 11] One of the theft charges was subsequently upgraded to the felony offense of purse snatching and assigned Docket Number 07-226. [*Id.*, p. 12]

On July 16, 2007 petitioner entered into a plea agreement and pled guilty to the purse snatching charge under Docket Number 07-226. As part of the agreement, the State agreed to forego charging petitioner under Louisiana's Habitual Offender Law, La. R.S.15:529.1. [Phillips I at Doc. #1-3, Exhibit C, pp. 9-26] On September 13, 2007 he was sentenced to serve 20 years at hard labor. [Phillips I, Exhibit E, pp. 32-40] He did not appeal his conviction or sentence. [Phillips I, Doc. #1, ¶8]

On some unspecified date petitioner filed a *pro se* application for post-conviction relief; on August 6, 2008 his application was denied by the District Court.[1] The application presented the

---

[1] The record is somewhat confusing. In a subsequent Judgment, the District Court made reference to "Reasons for Judgment on Application for Post-Conviction Relief 07-226 August 6, 2008 at 1)." [See Phillips I at Doc. #1-2,pp. 6-8; Doc. #5, pp. 3-5] Petitioner has also provided what purports to be a copy of his first Application for Post-Conviction Relief and that

2

following claims: (1) denial of the right to counsel at the April 13, 2007 arraignment; (2) illegal sentence based on an incomplete pre-sentence investigation report; (3) constitutionally excessive sentence; (4) defective bill of information; (5) ineffective assistance of counsel; (6) inconsistent statements used to upgrade a misdemeanor charge to a felony; (7) no mental examination or determination of competency. [Phillips I, Doc. #5, pp. 73-83] It does not appear that petitioner sought review of the August 6, 2008 judgment.

Instead, on December 8, 2008 he filed a *pro se* Motion to Withdraw his guilty plea in the Thirty-Fifth Judicial District Court. In that pleading he alleged the following grounds: (1)accused did not possess an understanding of the law in relation to the facts concerning the charge of purse snatching; (2) the accused entered a guilty plea without a full and complete awareness of the consequences of his plea and he was not advised of the mandatory provisions of the sentence or his eligibility for probation, parole, or suspension of sentence; (3) incomplete pre-sentence investigation report (no tests performed as required by

---

pleading is dated September 28, 2008. See Doc. #5, pp. 73-83. Further, in a cover letter accompanying various exhibits submitted in response to an amend order, petitioner claimed "... in the matter of my post conviction relief. The date of mailing has been misplaced and I don't have it among my documents. Also the filed date is unknown to me..." [Doc. #5, p. 2]

La. R.S. 15:1132); (4) ineffective assistance of counsel based on counsel's failure to (a) raise insanity defense; (b) challenge the incomplete pre-sentence investigation report; (c) prevent petitioner from entering a guilty plea; and (5) petitioner not represented by counsel at the April arraignment. [Phillips I, Doc. #5, pp. 8-19] On December 8, 2008, the same date it was filed, this Motion was denied. [1:10-cv-0834 (Phillips II) Doc. #1-2, p. 1.]

On January 8, 2009 petitioner filed a writ application in the Third Circuit Court of Appeals seeking review of the December 8, 2008 judgment. [Phillips I, Doc. #5, p. 20 (Notice of Intent); pp. 21-31, Petition for Writ of Review] Petitioner argued the following claims to the Third Circuit: (1) Petitioner was not offered a written plea agreement; (2) breach of the plea agreement because pre-sentence investigation was incomplete in that no tests were conducted on petitioner; (3) petitioner was not provided counsel at his arraignment; (4) involuntary guilty plea based on the Court's failure to advise him of the consequences of his plea and his eligibility for parole, probation, or suspension of sentence; and, (5) ineffective assistance of counsel based on counsel's failure to (a) object to the fact that petitioner was not represented by counsel at this April 13, 2007 arraignment; (b)

4

object to the incomplete pre-sentence investigation report. [*Id.*]

On June 3, 2009 the writ was denied in part and not considered in part, the Appeals Court having found, "... no error in the trial court's ruling denying relief on Relator's 'Motion to Withdraw Invalid Guilty Plea...'" The Court of Appeals also noted that petitioner's application contained claims that were not presented in the District Court and those claims were not considered. [State of Louisiana v. Jonica H. Phillips, No. KH 09-00038 at Phillips II, Doc. #1-2, p. 2]

On June 12, 2009 he filed a writ application in the Louisiana Supreme Court raising claims identical to the claims raised in the District Court proceeding. [Phillips I, Doc. #5, pp. 32-46]

While that matter was pending, on June 18, 2009 petitioner filed a "Motion to Correct an Illegal Proceeding" which was construed by the District Court as an application for post-conviction relief and denied on July 27, 2009. [Phillips I, Doc. #5, p. 6]

On July 24, 2009 petitioner filed a Writ of Mandamus directed to and asking the Third Circuit Court of Appeals to order the District Court to rule on petitioner's 2008 application for post-conviction relief. Petitioner, however, apparently filed this motion in the District Court. On July 27, 2009 the District Court

5

issued an order denying relief noting (a) petitioner filed his application in the wrong court; and (b) the District Court had in fact acted on his first application for post-conviction relief by denying it on August 6, 2008. [Phillips I, Doc. #5, p. 7]

On November 20, 2009, petitioner filed a *pro se* Motion to Set Aside Sentence or Motion to Amend or Modify Sentence, or Petition for *Habeas Corpus* in the District Court.[2] On November 25, 2009 the District Court denied the motion. [Phillips I, Doc. #1-2, pp. 6-8; Doc. #5, pp. 3-5]

On December 4, 2009 petitioner filed a *pro se* pleading in the District Court entitled "To the Chief Justice Writ of Review, Habeas Corpus, or Motion to Amend and/or Modify Bill of Information." Petitioner again raised claims of (1) insufficiency of the evidence; (2) excessiveness of sentence; and (3) prosecutorial misconduct. [Phillips I, Doc. #5, pp. 47-56] On the same date he filed a *pro se* pleading in the Third Circuit Court of Appeals entitled, "Request for Hearing en banc of Writ of Review, Habeas Corpus or and Motion to Amend and/or Modify Bill of Information and Memorandum and Opposition in Support." [Doc. #5,

---

[2] Petitioner did not provide a copy of the pleading. According to the Reasons for Judgment denying relief, petitioner argued claims of insufficiency of the evidence, excessiveness of sentence and prosecutorial misconduct. [Phillips I, Doc. #1-2, pp. 6-8]

pp. 57-59]

On December 9, 2009 petitioner sought review of a district court judgment in the Third Circuit Court of Appeals. On March 30, 2010 his writ application was denied. In denying relief, the Court of Appeals construed his pleading as an application for post-conviction relief and denied relief because the pleading was filed beyond the time limits established by La. C.Cr.P. art. 930.8. State v. Phillips, No. KH 09-1479. [Phillips I, Doc. #1-2, p. 9]

On April 5, 2010 the Supreme Court denied petitioner's writ application seeking review of the Third Circuit judgment under Docket Number KH 09-00038. State of Louisiana ex rel. Jonica H. Phillips v. State of Louisiana, 2009-1442 (La. 4/5/2010), 31 So.2d 358. [See also Phillips II, Doc. #1-2, p. 3]

On April 9, 2010 petitioner submitted a pleading to the Louisiana Supreme Court entitled "Memorandum and Opposition in Support of Writ of Review of Certiorari to Amend and/or Modify Bill of Information to a Non Violent Offense." [Doc. #5, pp. 60-62] On the same date he submitted a pro se pleading to the Supreme Court entitled, "Newly Discovered Evidence Writ of Review of Certiorari to Amend and/or Modify Bill of information to a Non-Violent Offense." [Doc. #5, pp. 63-72]

On April 16, 2010 the Supreme Court rejected these filings and

returned the papers to petitioner unfiled with the notation, "We are returning your papers to you unfiled. As the enclosed action sheet reflects, the Court denied your application on April 5, 2010 under number 09-KH-1442." [Phillips I, Doc. #1-2, p. 10] Petitioner did not attempt to re-file these pleadings.

Petitioner filed both *habeas* petitions on May 12, 2010. In Phillips I he alleged the following grounds for relief:

(1) insufficient evidence for violent offense of purse snatching;

(2) excessive sentence; and

(3) prosecutorial misconduct (upgrading the charge from theft to purse snatching). [Phillips I, Doc. #1]

In the petition filed in Phillips II he alleged a single claim for relief: – petitioner did not understand the elements of the offense of purse snatching when he entered his plea.

## Law and Analysis

### 1. Exhaustion of State Court Remedies

Title 28 U.S.C. §2254 states, in pertinent part:

(b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court <u>shall not be granted unless it appears that</u>

(A) <u>the applicant has exhausted the remedies available in the courts of the State;</u> or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

This statute codified the jurisprudential rule of exhaustion which requires that state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases. Castille v. Peoples, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989). The doctrine serves "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). Federal and state courts are equally obliged to guard and protect rights secured by the Constitution, therefore, it would be inappropriate for a federal district court to upset a state court conviction without first giving the state court the opportunity to correct the alleged constitutional violation.

To have exhausted state remedies, a federal *habeas* petitioner must have fairly presented the substance of his federal constitutional claims to the state courts. Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). Exhaustion requires that any federal constitutional claim presented to the state courts be

9

supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims.  Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). "[F]ederal constitutional claims must have been presented to and considered by the state courts in a federal constitutional framework before resort can be made to federal courts." Yohey v. Collins, 985 F.2d 222, 226 (5th Cir.1993). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3, 7 (1982) (per curiam) (internal citation omitted).

In addition, a federal habeas petitioner must "fairly present" his federal constitutional claim to the highest state court. Skelton v. Whitley, 950 F.2d 1037, 1041 (5th Cir.), cert. denied sub nom. Skelton v. Smith, 506 U.S. 833, 113 S.Ct. 102, 121 L.Ed.2d 61 (1992); Richardson v. Procunier, 762 F.2d 429, 431 (5th Cir.1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir.1982), cert. denied, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983). In Louisiana, the highest state court is the Louisiana Supreme Court.

Thus, in order to properly exhaust a claim in the Louisiana courts, a federal litigant must have (1) fairly presented the substance of his federal constitutional claims (2) in a procedurally correct manner (3) to the Louisiana Supreme Court.

Beazley v. Johnson, 242 F.3d 248, 263 (5th Cir.2001; Deters v. Collins, 985 F.2d 789, 795 (5th Cir.1993).

Petitioner filed a number of collateral attacks on his purse snatching conviction, however, the only claims that were exhausted were those claims raised in his December 8, 2008 Motion to Withdraw an Invalid Guilty Plea [Phillips I, Doc. #5, pp. 8-19] because those claims were the only claims which were ultimately reviewed by the Third Circuit Court of Appeals [Phillips I, Doc. #5, pp. 20-31]and then the Louisiana Supreme Court. [Phillips I, Doc. #5, pp. 32-46]

In the Motion filed in the Thirty-Fifth Judicial District Court he alleged the following grounds:

(1)accused did not possess an understanding of the law in relation to the facts concerning the charge of purse snatching;

(2) the accused entered a guilty plea without a full and complete awareness of the consequences of his plea and he was not advised of the mandatory provisions of the sentence or his eligibility for probation, parole, or suspension of sentence;

(3) incomplete pre-sentence investigation report (no tests performed as required by La. R.S. 15:1132);

(4) ineffective assistance of counsel based on counsel's failure to - (a) raise insanity defense; (b) challenge the incomplete pre-sentence investigation report;(c) prevent

11

petitioner from entering a guilty plea; and,

(5) denied the right to counsel at his April arraignment.[Phillips I, Doc. #5, pp. 8-19]

In his subsequent writ application filed in the Third Circuit Court of Appeals Petitioner argued the following claims:

(1) Petitioner was not offered a written plea agreement;

(2) breach of the plea agreement because pre-sentence investigation was incomplete in that no tests were conducted on petitioner;

(3) petitioner was not provided counsel at his arraignment;

(4) involuntary guilty plea based on the Court's failure to advise him of the consequences of his plea and his eligibility for parole, probation, or suspension of sentence; and,

(5) ineffective assistance of counsel based on counsel's failure to

(a) object to the fact that petitioner was not represented by counsel at this April 13, 2007 arraignment;

(b) object to the incomplete pre-sentence investigation report. [Phillips I, Doc. #5, pp. 21-31, Petition for Writ of Review]

On June 3, 2009 the writ application was denied in part and not considered in part, the Appeals Court having found, "... no

12

error in the trial court's ruling denying relief on Relator's 'Motion to Withdraw Invalid Guilty Plea...'" The Court of Appeals also noted that petitioner's application contained claims that were not presented in the District Court and those claims were not considered. [State of Louisiana v. Jonica H. Phillips, No. KH 09-00038 at Phillips II, Doc. #1-2, p. 2]

In the June 12, 2009 writ application filed in the Louisiana Supreme Court petitioner raised the following claims, which, as can be seen, are identical to the claims raised in the initial filing in the District Court:

(1) petitioner did not possess an understanding of law in relation to the facts of the charge of purse snatching or the elements of the charge, or the true nature of the charge;

(2) petitioner lacked a full understanding of the consequences of his plea;

(3) incomplete pre-sentence investigation;

(4) ineffective assistance of counsel based on counsel's failure to:

(a) raise an insanity defense;

(b) challenge the pre-sentence investigation;

(c) prevent petitioner from entering his plea; and,

(5) petitioner was denied the right to counsel at his April

13

13, 2007 arraignment. [Phillips I, Doc. #5, pp. 32-46]

Petitioner now argues the following claims:

(1) insufficient evidence for violent offense of purse snatching [Phillips I, Doc. #1, p. 5];

(2) excessive sentence [Id., p. 7];

(3) prosecutorial misconduct (upgrading the charge from theft to purse snatching); [Id., p. 8], and,

(4) petitioner did not understand the elements of the offense of purse snatching when he entered his plea. [Phillips II, Doc. #1]

It is clear that petitioner did not fairly present the substance of his insufficiency of the evidence, excessive sentence or prosecutorial misconduct claims to the Louisiana Supreme Court. It also appears that these claims, when ultimately presented to the Third Circuit Court of Appeals, were rejected as untimely.[3]

As shown above, the only claims which were fairly presented

---

[3] Petitioner raised his sufficiency of the evidence, excessive sentence, and prosecutorial misconduct claims in the 2009 pleading styled, "To the Chief Justice Writ of Review, Habeas Corpus, or Motion to Amend and/or Modify Bill of Information." [See Phillips I, Doc. #5, pp. 47-56] He did not obtain review of these claims in either the Third Circuit Court of Appeals or the Supreme Court. When these claims were raised in the Third Circuit, the Court refused to address the merits because it was filed beyond the 2-year period of limitations established by La. C.Cr.P. art. 930.8. See State v. Phillips, No. KH 09-1479 [Phillips I, Doc. 1-2, p. 9] His attempt to seek review in the Supreme Court was also rejected when the Court returned the pleadings unfiled. [Phillips I, Doc. 1-2, p. 10] Petitioner apparently did not attempt to re-file the pleadings in the Supreme Court.

to the Supreme Court were the claims raised in petitioner's December 8, 2008 Motion to Withdraw Guilty Plea.

## 2. *Technical Exhaustion/Procedural Default and Traditional Procedural Default*

Since petitioner failed to fairly present the substance of his sufficiency of the evidence, excessiveness of sentence, or prosecutorial misconduct claims to the Louisiana Supreme Court, those claims remain unexhausted. It appears, however, that these claims, while unexhausted, may be considered "technically" exhausted since it is unlikely that petitioner could return to the Louisiana courts to re-litigate these claims.

Any attempt on petitioner's part to properly litigate his federal claims in the Louisiana Courts via an application for post-conviction relief would be doomed to dismissal as untimely pursuant to art. 930.8 since more than 2 years have elapsed since his judgment of conviction became final under Louisiana law.

In other words, petitioner's unexhausted claims must now be considered "technically" exhausted since State court remedies are no longer available. However, by the same token, these claims must now be considered procedurally defaulted. The procedural default doctrine bars federal *habeas corpus* review if the state courts would <u>now</u> refuse to address a *habeas* petitioner's unexhausted federal claim because litigation of those claims would be barred by state procedural rules.

15

A federal *habeas* claim is procedurally defaulted when the state court has based or would base its rejection of the claim on a state procedural rule that provides an adequate basis for relief, independent of the merits of the claim. <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-32 (1991).

These three claims may also be subject to dismissal under traditional notions of procedural default since it appears that the Third Circuit Court of Appeals applied the 2 year limitations period defined by La. C.Cr.P. art. 930.8 and declined to reach the merits of petitioner's sufficiency of the evidence, excessive sentence, and prosecutorial misconduct claims because they were time barred when they were initially raised in the District Court.

The pleading asserting these claims was filed more than two-years after petitioner's conviction became final under Louisiana law. Under Louisiana law, petitioner's judgment of conviction became final 30 days after sentencing, or on or about October 13,2007 when the delays for filing an appeal elapsed. See La. C.Cr.P. art. 914. Petitioner's pleading raising these claims was filed in either November or December 2009 and was thus clearly untimely.

Further, Louisiana Courts regularly invoke the provisions of La. C.Cr.P. art. 930.8 and it has been long recognized as a valid

16

procedural default. See <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997)("In denying [the] application, the Louisiana Supreme Court clearly and expressly indicated that its ruling was premised on the untimeliness of the claim under La.Code Crim.Proc. art. 930.8. [citations omitted] The court's holding is sufficient to fulfill the independence requirement. The state procedural rule also must be adequate. An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims. [Citations omitted] Moreover, '[a] state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief.' <u>Lott v. Hargett</u>, 80 F.3d 161, 165 (5th Cir.1996). There is no suggestion that art. 930.8 has been applied selectively or irregularly. Because Louisiana courts have regularly invoked the statute to bar untimely claims, we find nothing to trump the presumption of adequacy.")

Federal *habeas* review of these procedurally defaulted claims is barred "...unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman v.</u>

Thompson, 501 U.S. 722, 750-51, 111 S.Ct. 2546,  115 L.Ed.2d 640 (1991).

### A. Cause

In Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court explained that "cause" in the context of a procedural default refers to an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." Murray v. Carrier, 477 U.S. at 488, 106 S.Ct. at 2645 (internal citations omitted).

Clearly, the cause of the defaults identified above was petitioner's failure to properly advance his federal constitutional claims in a systematic manner to and in the Third Circuit Court of Appeal and the Louisiana Supreme Court. This failure was clearly not "... an impediment external to the defense..." Thus, petitioner cannot show "cause" for his default.

Further, if a *habeas* petitioner fails to demonstrate cause,

the court need not consider whether there is actual prejudice. Saahir v. Collins, 956 F.2d 115, 118 (5th Cir.1992). Nevertheless, as is shown more fully below, petitioner has not, nor can he show prejudice resulting from the Court's refusal to review the merits of these claims.

### B. Actual Prejudice

To show "actual prejudice," a federal *habeas* petitioner must establish "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); see also Smith v. Quarterman, 515 F.3d 392, 403 (5th Cir.2008).

Here, petitioner makes three assertions – (a) that the evidence was insufficient to convict him, or even to justify charging him with purse snatching; (b) that the 20 year sentence which was imposed following his conviction for that offense was excessive under the circumstances; and (c) that the prosecutor maliciously upgraded the theft charges. All three of these claims hinge on petitioner's misguided belief that the facts established in the investigation and in his plea colloquy were insufficient to convict him of purse snatching.

The standard for testing the sufficiency of the evidence on federal *habeas* review is whether, after viewing the evidence in the

19

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 LEd.2d 560 (1979).

Purse snatching is defined as "... the theft of anything of value contained within a purse or wallet at the time of he theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching ..." See La. R.S.14:65.1.

Under Louisiana law, the victim need not be holding the purse or wallet in order for the purse or wallet to be in her "immediate control" and the "snatching" element need not involve a violent face-to-face confrontation. See State v. Pierre, 2004-0010 (La. App. 4th Cir. 2/25/04), 869 So.2d 246 (Purse held to be in the immediate control of the victim when snatched from the counter in a grocery store near to where the victim was standing.); State v. Anderson, 418 So.2d 551(La. 1982)(Victim had immediate control of a purse taken from the floor near the victim's legs; and, "snatching" as described by the statute does not require a face-to-face confrontation between victim and offender.);   State v. Capote, 474 So.2d 497 (La. App. 4th Cir. 1985) (Purse removed from the back of a chair where victim was seated was snatched from her

immediate control.)

At the time of his guilty plea, petitioner was directed to provide the factual basis for his plea. Under oath, he replied, "I took a ... I was on drugs on, you know, I seen a [the victim, Ms. Maxwell][4] was sitting over in her car... Ms. Heather Maxwell. She was in the car. I didn't intend to hurt her or bring her harm in no way. I wanted to get me another fix, you know. I reached over like she said and blah, blah, blah... Okay. Well you know, I took it." Whereupon the Court asked, "You took her purse?" And petitioner replied, "Yes, sir. Like I said, I didn't intend to make no harm to come up on her ... by the purse snatching ... but... I did take her purse." [Phillips I, Doc. #1-3, p. 22] Further, petitioner has provided a copy of the victim's statement to the police in which she described the offense. According to that statement petitioner approached her as she was seated on the drivers side in her automobile; he engaged her in conversation. She asked him to step away from the car, then "... asked him again to step away from my car and he reached over my lap and grabbed my purse which was sitting in the passenger seat of my car." [Phillips I, Doc. #1-3, pp. 6-8]

Petitioner, by his own admission, was guilty of the offense of

---

[4] The transcript of the plea indicates "inaudible" at this juncture, however, it is clear from the context that petitioner was referring to the victim at this time.

purse snatching as defined by Louisiana law. Clearly the evidence was sufficient to convict him. The fundamental premise of his claim is without a basis in fact or law.

Further, the penalty for purse snatching is imprisonment with or without hard labor for not less than two, nor more than 20 years. See La. R.S.14:65/1(B). Thus, petitioner's sentence was within the limits set by the statute.

In order for the petitioner to establish that his sentence was excessive he must establish that the punishment was grossly disproportionate to the crime he committed. Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003); Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 LEd.2d 637 (1983).

If, as in this case, the contested sentence falls within the statutory limits, the sentence is entitled to a presumption of constitutionality and will not be upset unless it is so disproportionate to the offenses as to be completely arbitrary and shocking. Bonner v. Henderson, 517 F.2d 135 (5th Cir.1975).

Excessive sentence claims are analyzed as follows: First, a threshold comparison is made concerning the gravity of the offense against the severity of the sentence. If the sentence is grossly disproportionate to the severity of the offense, then and only then, the court compares the sentence in question to (1) sentences for similar crimes in the same jurisdiction, and (2) sentences for the same crime in other jurisdictions. McGruder v. Puckett, 954

22

F.2d 313 (5th Cir.), cert. denied, 506 U.S. 849, 113 S.Ct. 146, 121 L .Ed.2d 98 (1992). If the sentence is not "grossly disproportionate," however, in the first instance, the inquiry is finished. United States v. Gonzales, 121 F.3d 928 (5th Cir.1997), cert. denied, 522 U.S. 1063, 118 S.Ct. 726, 139 L.Ed.2d 664 (1998).

Outside the context of capital punishment, successful proportionality challenges are "exceedingly rare", and constitutional violations are sustained in only "extreme" or "extraordinary" cases. Ewing, supra; Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Petitioner's sentence is not shocking given the fact that he had a history of felony robbery convictions and "continuing criminal activity." [See Phillips I, Doc. #1-3, pp. 33-40, sentencing transcript]

Finally, petitioner has not shown prosecutorial misconduct. As shown above, petitioner, by his own admission, was guilty of the offense of purse snatching as that offense is defined under Louisiana law. The prosecutor merely amended a bill of information to charge petitioner with the appropriate offense.

In short, petitioner cannot show prejudice so as to entitle him to review of his procedurally defaulted claims. Indeed, as shown in this brief discussion, even if petitioner were afforded a hearing on the merits of his sufficiency of the evidence, excessive sentence, or prosecutorial misconduct claims, he would not be entitled to relief since those claims, in addition to being

procedurally defaulted, are manifestly without a basis in fact or law.

### C. Miscarriage of Justice

Since petitioner has failed to show "cause and prejudice" for his default, federal review of the "technically exhausted" claims may therefore be had only if necessary to avoid a fundamental miscarriage of justice. Coleman, 501 U.S. at 750, 111 S.Ct. 2546

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); Glover v. Cain, 128 F.3d 900, 904 (5th Cir. 1997). To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime. Corwin v. Johnson, 150 F.3d 467, 473 (5 Cir.1998); Ward v. Cain, 53 F.3d 106, 108 (5th Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." Callins v. Johnson, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting McClesky v. Zant, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner maintains his innocence but he has not shown as a factual matter that he is actually innocent of purse snatching.

As noted in the previous discussion of prejudice, petitioner,

by his own admission, was guilty of the offense. Thus, he  has not shown that he will suffer a fundamental miscarriage of justice from this court's failure to consider his *habeas corpus* claims of sufficiency of the evidence, excessiveness of sentence, and prosecutorial misconduct. Accordingly, petitioner cannot avoid procedural default of these claims on the grounds of actual innocence.[5]

### 3. *The Merits of the Exhausted Claims*

Only one of petitioner's remaining claims was fairly presented to the Louisiana Supreme Court – his claim that he did not understand the elements of the offense. When he filed these petitions, he was apparently unaware that three of his claims were subject to dismissal as noted above. It would be logical to assume that if given the opportunity, petitioner would amend his pleadings to raise all of the fully exhausted claims litigated in the Louisiana Supreme Court. Nevertheless, as is shown hereinafter, those claims are manifestly without merit and each in turn is refuted by the exhibits tendered by the petitioner.

### a. *Claim One – Petitioner did not understand the true nature of the charge against him.*

---

[5] Of course, petitioner may again object to this Report and Recommendation. In the event that he does object, he is encouraged to provide argument and evidence of "cause and prejudice" and "miscarriage of justice." Additionally, he is also encouraged to submit argument and evidence to establish that he either exhausted his federal claims, or that there were no state court remedies available, or that he still has the right to avail himself of state court remedies.

Petitioner claims that he did not understand the elements of purse snatching under Louisiana law. However, prior to accepting petitioner's guilty plea, the Judge asked him "... Mr. Phillips, you understand that you are charged with one count of La. R.S.14:65.1, purse snatching? ... And you understand the elements of that crime?" To which petitioner replied, under oath, "Yes, sir." [Phillips I, Doc. 1-3, p. 17]

When analyzing a collateral attack on a guilty plea entered pursuant to a plea bargain, "the representations of the defendant, his lawyer, and the prosecutor at [the original plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

Petitioner's conclusive and self-serving claims that he did not understand the elements of purse snatching are insufficient to overcome his sworn statement in court. Further, the trial court, when it accepted petitioner's guilty plea, concluded that his plea was "... knowingly, intelligently and voluntarily entered into and there is a factual basis for the plea..." [Phillips I, Doc. #1-3, p. 23] and his findings on these issues are entitled to the

26

presumption of correctness on federal *habeas* review. See 28 U.S.C.

§ 2254(e)(1); <u>Patterson v. Dretke</u>, 370 F.3d 480, 484 (5th

Cir.2004); <u>Roberts v. Dretke</u>, 356 F.3d 632, 639 (5th Cir.2004).

Petitioner, who presents nothing more than his own conclusive

allegations that his plea was involuntary fails to meet his burden

to rebut the presumption with clear and convincing evidence to the

contrary. See 28 U.S.C. § 2254(e)(1).

**b. Claim Two - Petitioner did not have a complete understanding and awareness of the consequences of his plea and was not informed of mandatory provisions or eligibility for parole and therefore the plea was not knowing and intelligent.**

Petitioner again makes a conclusive and self-serving claim

that is unsupported by the record. At the beginning of the plea

colloquy, petitioner's attorney announced the terms of the plea

agreement, "... Mr. Phillips would like to withdraw his plea of not

guilty and enter a plea of guilty to the charge. Ask for a ... PSI

to be done and I believe the state will forgo [an] habitual

offender status." [Phillips I, Doc. #1-3, p. 13]

The prosecutor then responded, "... if he successfully pleads

guilty he will be facing from two years to 20 years in the

penitentiary that's with or without hard labor... I am agreeable to

withdraw the habitual offender proceedings and just let it be your

determination alone ... as to what the sentencing is." [*Id.*]

The Court then asked petitioner's attorney whether he had

explained petitioner's constitutional rights to him and "[t]he risk

and benefits of going to trial versus pleading guilty to this matter... and the ins and outs of the deal that has been made with the state in this matter." Counsel answered in the affirmative. [Phillips I, Doc. #1-3, p. 16] He likewise answered in the affirmative when asked whether petitioner understood clearly "... the minimum and maximum penalties he's facing both currently and with being charged as a habitual offender." [Id. p. 17] Nevertheless, the Court, then asked the petitioner directly, "Do you understand the maximum penalty provided by law for that is a minimum of two years at hard labor ... two years with or without hard labor and up to 20 years?" To which petitioner responded, "Yes, sir."[Id.]

Petitioner was then asked whether he understood that by entering his plea he was "... authorizing this court to impose a maximum sentence allowed by law..." and petitioner again responded in the affirmative. [Id., p. 19]

Thereafter, the prosecutor noted, "Your Honor, specifically I want to address that particular point [whether or not other promises had been made] because whatever sentence he gets it's my belief that he is going to have to do at least 85% of that sentence and perhaps all of it and I just want him to be aware that if there has been any promise made as to what DOC is going to count the time... I don't know." Then, the Court and the prosecutor made it clear to petitioner that they were making no promises or giving any

assurances as to how the Department of Corrections would calculate his sentence or his eligibility for diminution of sentence. [*Id.*, p. 20-21]

In other words, petitioner's assertions are without any support in the record.

### c. Claim Three – Failure to provide a complete Pre-Sentence Investigation Report as mandated by La. R.S.15:1132 thus rendering the plea agreement invalid.

Petitioner claims that the pre-sentence investigation that was conducted pursuant to his plea agreement was deficient because no tests were performed as mandated by La. R.S.15:1132 which provides as follows:

> A. If a defendant is convicted of an offense, the court may order a pre-sentence investigation in accordance with the provisions of Code of Criminal Procedure Article 875. This investigation shall undertake educational, medical, physical fitness, psychiatric, and social studies of the defendant.

> B. The Department of Corrections or, with court approval, the pre-sentence and probation officers of the various courts are hereby authorized to enter into contracts with professional personnel to perform the tests. The report of the investigation shall make recommendations to the court as to the rehabilitation potential of the defendant, the stages required to make the defendant useful and productive, and as to whether the defendant should be placed on probation and the terms thereof or whether the defendant should be committed to a community rehabilitation center or prison, or to the Department of Corrections for assignment to an appropriate penal or correctional facility.

Contrary to petitioner's assertion, the statute does not mandate that tests be performed, but rather authorizes the

Department of Corrections to enter into contracts with professionals to perform the tests when necessary. Indeed, pursuant to La. C.Cr.P. art. 875, the pre-sentence investigation must inquire only "...into the circumstances attending the commission of the offense, the defendant's history of delinquency or criminality, his family situation and background, economic and employment status, education, and personal habits." See La. C.Cr.P. art. 875(A)(1). It appears that the pre-sentence investigation report submitted by the Department complied in all respects with the requirements of Art. 875. [Phillips I, Doc. 1-3, pp. 28-31]

Petitioner claims that an investigation into his "mental things in which he has a past history of" would have positively influenced the sentencing process. However, he does not otherwise explain the "mental things" and offers no reason to believe that the probation officer who conducted the pre-sentence investigation could have possibly been aware of such "mental things." To the contrary, the report indicates that when the probation officer asked petitioner to provide a statement, petitioner declined. [Phillips I, Doc. #1-3, p. 29 Section B, Offender's Statement]

**d. Claim Four - Ineffective Assistance of Counsel based on counsel's failure to: (a) raise an insanity defense; (b) challenge the pre-sentence investigation; and, (c) prevent petitioner from entering his plea.**

In Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), a slightly modified version of the two-prong test

30

articulated in Strickland  v. Washington, 446 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), was made applicable to claims of ineffective assistance of counsel during the plea process. See 474 U.S. at 58, 106 S.Ct. at 370. When a *habeas* petitioner claims that counsel rendered ineffective assistance during the plea process and negotiations, the defendant must show: (1) that counsel's performance was unreasonably deficient; and (2) that there is a reasonable probability that, but for counsel's deficient performance, the defendant would have elected to proceed to trial. *Id.*

The failure to raise meritless, futile objections or defenses can never constitute ineffective assistance of counsel. See Clark v. Collins, 19 F.3d 959, 966 (5th Cir.1994); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir.1990) (citing Murray v. Maggio , 736 F.2d 279, 283 (5th Cir.1984) (*per curiam*)).

Petitioner claims that his court-appointed attorney was ineffective because he failed to raise an insanity defense. Of course, petitioner has yet to provide one shred of evidence to suggest, much less prove, that he suffered from a mental disease or defect that rendered him incapable of distinguishing right from wrong at the time of the offense as would have been required in order to mount a successful defense based upon insanity at the

31

time of the commission of the offense. See La. R.S.14:14. Indeed, the plea colloquy itself established that petitioner appreciated right from wrong at the time of the offense.

Petitioner has also alleged that counsel was ineffective for failing to challenge the pre-sentence investigation report because no tests had been performed. As noted previously, petitioner has not alleged what these "tests" would have revealed and therefore, counsel cannot be faulted for failing to object to an otherwise accurate pre-sentence investigation report.

Petitioner also faults counsel for allowing petitioner to enter the plea. According to the plea transcript, the State was prepared to try the petitioner – *voir dire* had been completed and a jury was seated and ready to hear the evidence – when petitioner indicated his desire to plead guilty to the offense with the stipulation that he would not be prosecuted, adjudicated, or sentenced under Louisiana's Habitual Offender law, La. R.S.15:529.1. [Phillips I, Doc. #1-3, pp. 10-26] Petitioner had six felony convictions in North Carolina [Phillips I, Doc. 1-3, p. 30] and was facing the prospect of a forty year to life sentence had he gone forward to trial and ultimately been adjudicated an habitual offender. He has not, nor can he, establish that but for the alleged deficiency of counsel, he would have rejected the plea

32

offer and gone to trial.

**e. Claim Five – Petitioner was denied the right to counsel at his April 13, 2007 arraignment.**

Finally, petitioner claims that he was denied the right to counsel at his April 13, 2007 arraignment. The transcript of the April 13, 2007 arraignment was provided by petitioner and it reflects that on that date he was charged with two misdemeanors – possession of drug paraphernalia and theft of property having a value of less than $300. Petitioner offered to plead guilty in turn for a probated sentence, however, when the prosecutor indicated opposition to probation, petitioner entered a not guilty plea and the matter was fixed for trial.

While it is true that petitioner was not represented by counsel at that misdemeanor arraignment, it is also true that petitioner has shown no prejudice resulting from that circumstance. Further, as noted above, petitioner's July 16, 2007 guilty plea was a knowing and voluntary plea. A valid guilty plea, that is, one which is knowing and voluntary, waives all non-jurisdictional pre-plea defects. Smith v. Estelle, 711 F.2d 677, 682 (5th Cir.1983), cert. denied, 466 U.S. 906 (1984).

### Conclusion and Recommendation

Rule 4 of the Rules Governing Section 2254 Cases in the United

States District Courts provides that following examination of the pleadings by the court, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." (See also Kiser v. Johnson, 163 F.3d 326, 328 (5th Cir. 1999), "The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.' 28 U.S.C. foll. § 2254 Rule 4 Advisory committee Notes.")

Petitioner has provided the exhibits needed to conduct a thorough review of his claims. Based upon a review of the petitions, memorandum, and exhibits, it is clear that the petitioner is not entitled to relief – his claims of insufficiency of the evidence, excessiveness of sentence, and prosecutorial misconduct were not fairly presented to the Louisiana Supreme Court and therefore remain unexhausted but now procedurally defaulted and petitioner has not shown cause for or prejudice or a miscarriage of justice resulting from the refusal of the Court

34

to address the merits of these claims. Further, even if the merits of those claims were addressed petitioner would not be entitled to habeas corpus relief. Finally, with respect to those claims which were fully exhausted, petitioner has also not shown that he is entitled to relief. In short, petitioner has not shown that he is in custody in violation of the Constitution or laws of the United States and therefore,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by**

the District Court, except upon grounds of plain error.  *See,*
Douglass v. United Services Automobile Association, 79 F.3d 1415
(5th Cir.  1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254
Cases in the United States District Courts, this court must issue
or deny a certificate of appealability when it enters a final
order adverse to the applicant. Unless a Circuit Justice or
District Judge issues a certificate of appealability, an appeal
may not be taken to the court of appeals.  **Within fourteen (14)
days from service of this Report and Recommendation, the parties
may file a memorandum setting forth arguments on whether a
certificate of appealability should issue.**  See 28 U.S.C.
§2253(c)(2).  **A courtesy copy of the memorandum shall be provided
to the District Judge at the time of filing.**

In Chambers, Alexandria, Louisiana, September 16,
2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE